UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VILMA OQUENDO, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF SONNY RIVERA,<br>    *Plaintiffs*,<br><br>*v.*<br><br>DEPARTMENT OF CORRECTION, ET AL.,<br>    *Defendants*. | No. 3:16-cv-1709 (MPS) |

## RULING ON MOTION TO DISMISS

This lawsuit stems from the tragic death of Sonny Rivera, who died while in custody at the Northern Correctional Institution (NCI), in Somers, Connecticut. His mother, Vilma Oquendo, brings this action against the Department of Correction (DOC) and several of its employees, alleging constitutional violations and wrongful death, as administratrix of Rivera's estate and individually. (ECF No. 32.) Oquendo alleges that officers at NCI, as well as their supervisors and members of NCI's administration, were responsible for her son's death because of their actions, or their failures to act, while he was being held on suicide watch at NCI. The defendants have moved to dismiss several of the claims in Oquendo's Second Amended Complaint on multiple grounds. (ECF No. 33.) For the reasons that follow, I GRANT in part and DENY in part their motion.

### I.    Background

A.  Factual Background

Oquendo alleges the following facts in her Second Amended Complaint. (ECF No. 32.) Sonny Rivera was incarcerated at NCI in October 2014. (*Id.* at ¶ 82.) He was serving a three-year sentence, and he was scheduled to be released in March 2015. (*Id.* at ¶¶ 78–79.) DOC transferred

1

him to NCI in September 2014 "from a previous correction facility [soon] after he [was] believed to have interceded on behalf of an inmate who he believed had been wrongfully targeted by a corrections officer." (*Id.* at ¶¶ 88–90.) In October 2014, Rivera was being "held in solitary/suicide confinement in a cell at [NCI's] medical unit." (*Id.* at ¶ 5.) Rivera had told a family friend that "he believed his life was in danger" because of his intercession on behalf of the inmate and that "when the Corrections Department wishes to injury [sic] or 'off' and [sic] inmate, they send him to Northern . . . where the facility's official report was that the inmate had committed suicide." (*Id.* at ¶¶ 90–92.) "There has [sic] been other inmates who had been reportedly killed at [NCI]" and NCI's "official report was that the inmate had committed suicide." (*Id.* at ¶ 92.)

Oquendo alleges that, on October 17, 2014, the DOC informed Oquendo that Rivera had died. (ECF No. 32 at ¶ 82.) DOC also "informed the decease[sic]'s family that the decease [sic] had committed suicide[] and [that] he had attempted to hang himself the day before." (*Id.* at ¶ 83.) Oquendo called NCI and spoke to a female correctional officer, who informed Oquendo that "no one had died at that prison, because she would have known." (*Id.* at ¶ 84.) Oquendo then called and spoke to the Warden or Deputy Warden of NCI, who "confirmed that the deceased had died." (*Id.* at ¶ 85.) Oquendo went to view her son's body, and she noted that he had "fresh ligature marks around his neck, a deep laceration on his left forearm, lumps in his head, and on his body." (*Id.* at ¶ 86.) She "also noted that her son's [sic] had a large sutured laceration on his left arm running from his wrist upwards on the inside of his forearm running towards the elbow." (*Id.* at ¶ 87.) "DOC personnel" stated that Rivera "committed suicide by stuffing gauze, paper napkin, and Styrofoam (contraband) down his air passage." (ECF No. 32 at ¶ 93.) DOC personnel assigned to watch Rivera over video surveillance while he was in suicide confinement reported that they "thought he was eating presumably [sic] at the time he was actually stuffing [the materials] down

his passage." (*Id.* at ¶ 94.) The DOC informed the medical examiner that Rivera committed suicide, and, in the autopsy report, the medical examiner also concluded that Rivera's death was a suicide. (*Id.* at ¶ 105.)

Oquendo's complaint alternatively suggests that DOC personnel murdered Rivera and that they intentionally failed to intervene in his suicide attempt. She alleges that when the medical examiner performed the autopsy, the "toxicology examination reveal [sic] that his blood contained levels exceeding ten Benadryl tablets (contraband)." (ECF No. 32 at ¶ 98.) Oquendo alleges that Rivera's "blood level of Benadryl . . . by itself would have killed the deceased[] and at least rendered him unable to commit suicide" and "would not have enabled him to stuff gauze, paper napkin, and Styrofoam . . . down his air passage." (*Id.* at ¶¶ 100–01.) She claims that "the ligature marks that were evidenced around the decease [sic]'s throat appears [sic] as if someone attempted to strangle him from behind and was [sic] therefore not self inflicted [sic]." (*Id.* at ¶ 97.) She also alleges, though, that the defendants intentionally "failed to take or relieve the deceased of physical articles (contraband) he subsequently used to affect [sic] his suicide" while they monitored Rivera by video, in violation of DOC regulations. (*Id.* at ¶¶ 106–111.)

Oquendo further alleges that the defendants who held supervisory roles failed to "assign[] a 'specially posted' Correction Officer to account for, and collect all containers, . . . utensils, gauzes, paper towels, napkins, and toilet paper[,] . . . despite the fact all defendants were trained in suicide prevention." (*Id.* at ¶ 62.) She alleges that this amounted to the defendants "personally, consciously, and intentionally fail[ing] to supervise personnel whose job [it was] to secure [DOC's] medications from the deceased, causing him to personally steal medication from the medical unit" (*id.* at ¶ 66), "creat[ing] and enforc[ing] rules, regulations, customs, policies[,] and procedures under which unconstitutional practices occurred, or allowed the continuance of such

3

policies or custom," and being "personally involved in the decease[sic]'s alleged constitutional deprivations." (*Id.* at ¶ 71.)

B. Procedural History

Oquendo filed her original complaint on October 14, 2016. (ECF No. 1.) She filed an amended complaint on November 18, 2016. (ECF No. 11.) She filed a motion to file a supplemental amended complaint on December 9, 2016, which I granted on December 14, 2016. (ECF No. 12, 13.) Oquendo filed her First Amended Complaint on December 21, 2016. (ECF No. 16.) On March 10, 2017, the defendants filed a motion to dismiss. (ECF No. 26.) I ordered Oquendo either to file an amended complaint, addressing the defects the defendants identified, or to respond to the motion to dismiss. (ECF No. 27.) Oquendo filed her Second Amended Complaint on April 10, 2017. (ECF No. 32.) In the Second Amended Complaint, she brings claims under "42 United States Codes [sic] §[ ]1983, §[ ]1985(3), §[ ]1986, §[ ]1988(b) and (c) *et seq.*,, [sic] supervisory liability, Monell [sic], U.S. Const. amend. XIV, [and] U.S. Const. amend. VIII" as well as a claim for "wrongful death claim pursuant to and as set forth in Connecticut General Statute §[ ]52-555, and the common law of the State of Connecticut" against Weiner, Romano, and Pilon (the "Individual Defendants") and Emmelmann, Perez, Guimond, Saylor, Mulligan, Cyr, Maranelli, and John/Jane Does (the "Supervisory Defendants"). (ECF No. 32 at 1.)

On April 27, 2017, the defendants renewed their motion to dismiss. (ECF No. 33.) They partially incorporated their previous briefing where relevant. (*Id.*)

**II.** **Legal Standard**

A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. . . . A plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

    B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under *Twombly*, the Court accepts as true all of the complaint's factual allegations—but not conclusory allegations—when evaluating a motion to dismiss. *Twombly*, 550 U.S. at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp.2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, No. 09-cv-1412 (JFK), 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).

**III.    Analysis**

    A. Oquendo's Individual Claims

The defendants have moved to dismiss any claims that Oquendo brought in her individual capacity. Oquendo argues that she has an individual claim only for wrongful death, not for the other counts of her complaint. (*See* ECF No. 42 at 11–12.) She argues that because she is the

"Connecticut Court's designee as the administratrix of the estate of her son, whose love[,] society, and affect she has now lost," she "has standing to sue in her individual capacity" in addition to standing to sue as administratrix. (*Id.* at 12.)

Connecticut's wrongful death provision states that:

[i]n any action surviving to or brought by an executor or administrator *for injuries resulting in death*, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault *for such injuries* just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses[.]

Conn. Gen. Stat. § 52-555(a) (emphasis added). The statutes makes plain that the injuries that the administratrix of an estate can recover for are the injuries that resulted in the death, and the Connecticut Supreme Court has held that "[t]he wrongful death statute is the *sole* basis upon which an action that includes as an element of damages a person's death or its consequences can be brought." *Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282, 295 (1993) (emphasis added). "[T]here is no cause of action for postmortem loss of filial consortium under Connecticut law." *Belliveau v. Stevenson*, 123 F.3d 107, 110 (2d Cir. 1997).

Therefore, because Connecticut law does not allow Oquendo to bring claims arising from her son's death apart from the claims in her capacity as administratrix authorized by the wrongful death statute, I GRANT the defendants' motion to dismiss Oquendo's individual capacity claim.

B. <u>Claims against Defendants in their official capacity</u>

The defendants have moved to dismiss all claims that Oquendo brought against the DOC or against the individual defendants in their official capacities, arguing that the Eleventh Amendment bars these claims. (ECF Nos. 26 at 11–12, 33 at ¶ 2.) Oquendo responded that she did not intend to include any claims against the DOC or against the individual defendants in their official capacities in her Second Amended Complaint. (ECF No. 42 at 11.) Therefore, I GRANT

6

the defendants' motion to dismiss any claim against the DOC and any claims against the individual defendants in their official capacities.

C. Claims under 42 U.S.C. Sections 1985(3), 1986, and 1988

The defendants have moved to dismiss all claims under 42 U.S.C. Sections 1985(3), 1986, and 1988. They argue that: (1) Oquendo has not alleged sufficiently a class- or race-based conspiracy to state a claim under Section 1985; (2) because she has not stated a viable Section 1985 claim, she necessarily has not stated a Section 1986 claim; and (3) Section 1988 does not create a cause of action. For the reasons that follow, I agree.

Subsection 1985(3) prohibits conspiracies "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). A plaintiff advancing a claim under § 1985(3) must allege:

> (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

"Section 1985(3) does not provide substantive rights itself; it provides a remedy for persons injured by a conspiracy to deprive them of the equal protection of the laws, or of equal privileges and immunities under the laws." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 461 (D. Vt. 2013) (internal quotation marks omitted) (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979) and *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 832–33 (1982)). "The right or rights claimed to have been infringed must be found elsewhere." *Jenkins*, 983 F. Supp. at 461 (internal quotation marks and citations omitted) (citing *Novotny*, 442 U.S. at 372, *Carpenters*, 463 U.S. at 833).

7

In addition, a Section 1985(3) "conspiracy must . . . be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (internal quotation marks and citation omitted). The Supreme Court has been reluctant to turn Section 1985 into "a general federal tort law." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Courts in the Second Circuit do not recognize a class of one theory of liability under Section 1985(3). *Doe v. Mastoloni*, No. 3:14–CV–00718 (CHS), 2016 WL 593439, at *16 (D. Conn. Feb. 12, 2016).

"[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). "Conspiracy claims under § 1985(3) must contain 'specific factual allegations,' and a complaint consisting of 'nothing more than conclusory or vague allegations of conspiracy' is insufficient to survive a motion to dismiss.'" *Doe*, 2016 Wl 593439, at *16 (citing *Vertical Broad, Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 398–90 (E.D.N.Y. 2000)). The Second Circuit has "repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutionally rights will be dismissed." *True v. New York State Dep't of Corr. Servs.*, 613 F. Supp. 27, 32 (W.D.N.Y. 1984) (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977)); *South Salina St. v. City of Syracuse*, 566 F. Supp. 484, 493 (N.D.N.Y.), *aff'd*, 724 F.2d 26 (2d Cir.1983)).

Oquendo asserts that "42 U.S.C. Section 1985(3) is applicable to non-race and class [sic] based discrimination. Therefore, the absence of race based assertions regarding the death of []Rivera is neither fatal or limiting in a wrongful death context." (ECF No. 42 at 13.) But she cites no authority for the notion that a wrongful death action can sustain a claim under Section 1985(3)

8

on its own, and she points to no allegations suggesting class-based animus. Without *any* allegations of group-based animus—whether race-based or class-based—a Section 1985(3) claim cannot go forward. *Britt*, 457 F.3d at 270 n.4; *see also Doe*, 2016 WL 593439, at *16.

Oquendo also has not alleged sufficiently that the defendants formed a conspiracy for the purpose of depriving Rivera of his rights. In the Second Amended Complaint, Oquendo provides only two allegations that the defendants formed a conspiracy: (1) "[t]hat on information and belief, the Defendants conspired with others and each other for purposes of causing injury and death to the deceased" (ECF No. 32 at ¶ 74); and (2) "[t]hat on information and belief, the Defendants conspired with one or more persons and them [sic] in injuring the deceased, and depriving him of his rights under the United States Constitution, by violating his right to due process, and subjecting him to cruel and unusual punishment as to denying him adequate medical treatment." (*Id.* at ¶ 126.) These allegations are nothing more than "'conclusory,' 'vague,' or 'general allegations' of a conspiracy" and must "be dismissed." *True*, 613 F. Supp. at 32.[1]

Because Oquendo has not stated a claim under Section 1985(3), she also has not stated a claim under Section 1986. *See* 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [S]ection 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured or his legal representatives[.]"); *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) ("[A] Section 1986 claim must be predicated on a valid Section 1985 claim."). And because Section 1988 does not provide a cause of action—instead, it "authorize[es] the district

---

[1] Because Oquendo has not alleged sufficiently the existence of any conspiracy, it is not necessary for me to reach the defendants' arguments based on the intra-corporate conspiracy doctrine. (*See* ECF Nos. 26-1 at 16–17, 42 at 14–16.)

9

courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation[]", *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)—Oquendo's claim under that provision fails as well.

Therefore, I GRANT the defendants' motion to dismiss Oquendo's claims under Sections 1985(3), 1986, and 1988.

### D. Duplicate Claims under Section 1983

The defendants have moved to dismiss Count Two as duplicative of Count Four. They argue that "Count Two and Count Four both purport to be claims of supervisory officials' liability pursuant to 42 U.S.C. § 1983[,] and both are against the same defendants. Plaintiff cannot plead the same count twice. Duplicative claims may be dismissed." (ECF NO. 33 at ¶ 5.) Oquendo attempts to distinguish between the claims as follows:

> there is no evidence that the Plaintiffs 'duplicated counts,' as alleged by the defendants . . . . The fact is that both counts were brought pursuant to 42 U.S.C. §[ ]1983, but on two different legal theories. Count Two asserts that the supervisory defendants intentionally, and with deliberate indifference consciously, and intentionally ordered the[ir] non-supervisory DOC personnel . . . and intentionally withheld instructing them to collect the refuse (contraband) from . . . Rivera. Additionally, the supervisory defendants refused to assign a 'special post' to provide personal and individual surveillance of . . . Rivera as required by DOC's regulations. Count Four on the other hand deals exclusively with the supervisory defendants' failure to provide training, provide observation of Mr. Rivera, failure to transport him to a hospital so he could receive medical treatment, and by [sic] their acts and omission in [sic] by their failure to conduct personal tours of Mr. Rivera's cell.

(ECF No. 42 at 18.)

Although Counts Two and Four are not models of clear pleading, the factual allegations in those counts plead violations of Rivera's Eighth and Fourteenth Amendment rights by the Supervisory Defendants under alternate theories. To make a plausible claim that a supervisory defendant is liable for a constitutional violation, a plaintiff must allege facts showing that the supervisor had "personal involvement . . . in alleged constitutional deprivations." *Colon v.*

10

*Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "In the Second Circuit, such personal involvement may be shown by evidence that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Ziemba v. Lajoie*, No. 3:11-cv-00845 (JAM), 2016 WL 5395265, at *7 (D. Conn. Sept. 26, 2016) (internal quotation marks omitted) (quoting *Colon*, 58 F.3d at 873). Oquendo pleads in Count Two the first theory of liability from *Colon*: that the Supervisory Defendants intentionally failed to protect Rivera by not instructing the defendant officers to monitor him. (ECF No. 32 at 28.) In Count Four, she instead appears to allege liability under the third, fourth, or fifth theories: that the Supervisory Defendants were "responsible for enforcing, maintaining, correcting, [sic] the policies and practices, rules, procedures, culture, and custom at the facility where the deceased was harmed, injured, and died", "intentionally, willfully, wantonly, and recklessly in failing [sic] to provide adequate and suitable training to personnel and monitoring of the deceased to keep him safe and secure," "exhibited conscious disregard for the safety of the deceased in failing to keep him free from injury, harm, and death," and "exhibited gross negligence[.]" (*Id.* at ¶¶ 167–69.)

Therefore, I construe Count Four as another Section 1983 claim against the Supervisory Defendants for alleged Eighth and Fourteenth Amendment violations, but under an alternative factual theory of liability from the one set forth in Count Two. Because Rule 8(d) allows a party to present "two or more statements of a claim . . . alternatively . . . either in a single count . . . or in separate ones," because Rule 8 also allows parties to plead inconsistent factual theories, and because "[p]leadings must be construed so as to do justice," I will allow the two alternative factual

bases for liability under Section 1983 for Eighth and Fourteenth Amendment violations to proceed as Counts Two and Four. Fed. R. Civ. P. 8(d)–(e). The defendants' motion to dismiss is DENIED on this claim.

    E. <u>Negligence Claims in Counts One and Two</u>

The defendants also have moved to dismiss any negligence claims included in Counts One, Two, and Four. These counts allege Eighth and Fourteenth Amendment violations under Section 1983 against the Supervisory and Individual Defendants. The defendants argue that any claims based in mere negligence against all defendants or gross negligence against the supervisory defendants must be dismissed. (ECF No. 33 at 6–8.) That motion is GRANTED in part and DENIED in part.

    *1. Mere Negligence*

"[T]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). And, "to state a cognizable Section 1983 claim [for violation of Eighth Amendment rights], the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). Therefore, I GRANT the defendants' motion to dismiss any claim Oquendo makes for Eighth and Fourteenth Amendment violations based solely on allegations of mere negligence in Counts One, Two, and Four of her Second Amended Complaint.

    *2. Gross Negligence*

The defendants also argue that any claim based in "gross negligence" against the Supervisory Defendants in Counts Two and Four should be dismissed. As discussed above, *Colon* provides five ways for a plaintiff to plead supervisory liability. *Colon*, 58 F.3d at 873. The defendants argue that *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009) "effectively abrogated the gross negligence standards recognized by *Colon* . . . as a potential pathway to supervisory liability[.]" (ECF No. 33 at 7.) They state that "the Second Circuit has noted, without deciding, that the five types of liability articulated in *Colon* may not all have survived the holding in . . . *Iqbal*." (*Id.* (citing *Reynolds v. Barrett*, 685 F.3d 1983, 205 n.14 (2d Cir. 2012).)

But "*Iqbal* dealt specifically with allegations of intentional discrimination, and the Court noted explicitly that the factors necessary to establish liability 'will vary with the constitutional provision at issue.'" *Ziemba*, 2016 WL 5395265, at * 7 (quoting *Iqbal*, 566 U.S. at 676); *see also Turkmen v. Hasty*, 789 F.3d 218, 250 (2d Cir. 2015). "A claim of deliberate indifference, grounded in the Eighth Amendment, differs from intentional discrimination claims like the claim in *Iqbal*. Deliberate indifference claims are governed by an approach consistent with recklessness in the criminal law, rather than a standard based on purpose of intent."[2] *Ziemba*, 2016 WL 5395265, at * 7 (internal quotation marks omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). And this "standard is consonant with the liability tests listed in *Colon*—such as failing to remedy a wrong despite being informed of it—that fall short of purposeful involvement but require some

---

[2] Although *Farmer v. Brennan*, 511 U.S. at 837, uses the terms "recklessness" and "deliberate indifference," while the defendants have moved to dismiss any of Oquendo's Section 1983 claims that are "based on a theory of 'gross negligence'" (ECF No. 33 at 7), the Second Circuit has stated that gross negligence and deliberate indifference are "closely associated, such that gross negligent conduct creates a strong presumption of deliberate indifference." *Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 143 (2d Cir. 1981) (footnote omitted); *Allen v. New York City Dep't of Correction*, No. 06-cv-7205 (RJS) (MHD), 2010 WL 1644943, at *12 (S.D.N.Y. Mar. 17, 2010), *report and recommendation adopted*, No. 06-cv-7205 (RJS), 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010) ("[An Eighth Amendment Claim] may be based simply on deliberate indifference, a test that may be satisfied, at least in some circumstances, by a showing of gross negligence."). Especially given the Court's obligation to draw reasonable inferences in favor of the pleader at this stage, it would be improper to dismiss allegations of gross negligence in a claim requiring a showing of deliberate indifference.

sort of knowing disregard." *Ziemba*, 2016 WL 5395265, at * 7 (citing *Colon*, 58 F.3d at 873); *see also Drew v. City of New York*, No. 16-cv-0594 (AJP), 2016 WL 4533660, at *12 (S.D.N.Y. 2016) (concluding that *Iqbal* does not affect application of the *Colon* factors in cases "where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards").

As already discussed, I am construing Counts Two and Four both to state claims for violation of the Eighth and Fourteenth Amendments. In these counts, Oquendo is not alleging claims that require proof of purposeful discrimination, and so *Iqbal*'s limitation on supervisory liability does not apply. *See Ziemba*, 2016 WL 5395265, at * 7; *Colon*, 58 F.3d at 873. Therefore, I DENY the defendants' motion to dismiss any gross negligence claims contained in the Second or Fourth Count of the Second Amended Complaint.

F. Negligence as a Basis for Wrongful Death

The defendants also have moved to dismiss any allegations of liability based on "negligence" in Oquendo's wrongful death claim, arguing that state employees are immune from negligence claims under Conn. Gen. Stat. Section 4-165(a). (ECF No. 26-1 at 18.) I agree.

Conn. Gen. Stat. Section 4-165(a) states that:

> [n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment.

This effectively means that "state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003). Although Count Three does allege "intentional[]", "reckless[]", and "wanton[]" actions—for which the defendants may be liable—it also alleges that the defendants failed to make other actions that were "reasonable" or "adequate," under the circumstances. (ECF No. 32 at 31–33.)

14

Elsewhere, Oquendo further alleges that "agents of the DOC negligently cause [Rivera's] death by their failure to provide adequate security measures under the circumstances." (*Id.* at ¶ 6.) These allegations suggest that Oquendo is seeking to hold the defendants accountable for solely negligent conduct, which Section 4-165(a) bars.[3] Therefore, I GRANT the defendants' motion to dismiss Count Three, as far as it alleges negligence as a basis for violation of Conn. Gen. Stat. 52-555. Count Three is not dismissed, though, as to the allegations that the defendants' conduct was wanton, reckless, or malicious or grossly negligent. Conn. Gen. Stat. § 4-161(a).

### G. *Monell* claim

Although Oquendo does not designate a specific *Monell* count in her Second Amended Complaint, she does reference *Monell* liability as basis for her action. (ECF No. 32 at 1.) The defendants have moved to dismiss any *Monell* claim. (ECF No. 33 at 6.) Plaintiff's counsel states in the opposition brief that: "[t]he Plaintiffs did not plead a Monell [sic] claim against the defendants in any of the four Counts contained in the Second Amended Complaint. To the extent the defendants believe that a Monell [sic] claim was made by the Plaintiff's [sic] in the Second Amended Complaint, none of the four Counts captioned in this matter is termed, or pleads a Monell [sic] claim." (ECF No. 42 at 19.) Therefore, I GRANT the defendants' motion to dismiss any *Monell* claim.

### IV. Conclusion

For the reasons stated above, I DISMISS any claims Oquendo brought in her individual capacity, any claims against the DOC or against the individual defendants in their official capacity, any *Monell* claims, any claims of negligence as a basis for wrongful death, and any claims of mere

---

[3] As previously discussed, Oquendo also alleges that the defendants were "grossly negligent" in causing Rivera's death. (ECF No. 32 at ¶ 149.) Because gross negligence and recklessness are closely related concepts and because the facts regarding the defendants' mental states have not yet been developed, I am not dismissing any claims of gross negligence.

15

negligence as a basis for liability under Section 1983 for Eighth or Fourteenth Amendment violations. Oquendo's claims as administratrix of Rivera's estate will proceed on the remaining theories of liability against the defendants in their individual capacities.

According to the scheduling order in this case (ECF No. 37), the deadline for discovery is **June 1, 2018**. Dispositive motions are due on or before **July 1, 2018**. The Joint Trial Memorandum is due **August 1, 2018**, or 30 days from the Court's ruling on dispositive motions, if any are filed.

It is SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         February 27, 2018